IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CARL A. BLACKWELL                :    CIVIL ACTION
                                 :
        v.                       :
                                 :
PENNSYLVANIA DEPARTMENT OF       :
CORRECTIONS, et al.              :    NO. 12-987


                              MEMORANDUM

McLaughlin, J.                                        January 9, 2013

	This § 1983 suit is brought pro se by a former inmate of the State Correctional Institution at Mahanoy ("SCI Mahanoy") who alleges that various prison officials ignored his requests for medical treatment in violation of the Eighth Amendment while he was incarcerated at that facility.  The plaintiff, Carl A. Blackwell, has named as defendants John Wetzel, Secretary of Corrections;[1] Richard Ellers, Director of the Pennsylvania Department of Corrections ("DOC") Bureau of Health Care Services; John Kerestes, SCI Mahanoy Superintendent; Brenda Tritt, SCI Mahanoy Deputy Superintendent for Centralized Services; Marva Cerullo, Corrections Health Care Administrator at SCI Mahanoy (collectively, the "Commonwealth Defendants"); Dr. John Lisiak, Medical Director at SCI Mahanoy; and Prison Health Service ("PHS"), Dr. Lisiak's employer.[2]  The Commonwealth Defendants

---

    [1] The complaint misidentifies Wetzel as "John Wetzed."

    [2] The complaint also named the DOC as a defendant.  The Court previously dismissed Blackwell's claims against the DOC on sovereign immunity grounds.  3/31/12 Order (Docket No. 8) ¶ 3.

have moved to dismiss the claims against them in their official capacities under Rule 12(b)(1) of the Federal Rules of Civil Procedure and the claims alleged against them personally for failure to state a claim under Rule 12(b)(6). PHS has also moved for dismissal under Rule 12(b)(6) for failure to state a claim. Dr. Lisiak has moved for judgment on the pleadings under Rule 12(c), similarly arguing that the complaint fails to state a claim against him.

The Court will grant all three of the defendants' motions. The Court dismisses the claims against the Commonwealth Defendants and PHS without prejudice, and grants judgment in favor of Dr. Lisiak on the Eighth Amendment claim against him.

I. Factual Allegations[3]

The events at issue in this suit all took place while Blackwell was an inmate at SCI Mahanoy in 2011 and 2012. Since

---

[3] The facts are drawn from the complaint and accompanying exhibits submitted by the plaintiff, which the Court may consider in deciding both a motion to dismiss and a motion for judgment on the pleadings. Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 31-32 (3d Cir. 2011) (per curiam); Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). None of the facts discussed herein are taken from Dr. Lisiak's answer, as the Court's resolution of his motion for judgment on the pleadings does not rely on the sparse affirmative factual allegations contained in that pleading. For purposes of all three of the defendants' motions, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in favor of the non-moving plaintiff, while disregarding any legal conclusions. See Huertas, 641 F.3d at 32; Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

initiating this action, Blackwell has been released from prison.

Beginning in January 2011, Blackwell sought treatment from medical staff at SCI Mahanoy for sleep apnea. Over the next thirteen months, Blackwell went to sick call "numerous times" asking for treatment related to the condition but received none. According to the complaint, sleep apnea is a "silent killer," and Blackwell's lack of treatment has caused him to suffer, among other things, tiredness, "morning headaches," delusion, hallucinations, anxiety, nightmares, "tra[n]sient paranoia," and "minor brain damage." Compl. II.D, V.

At various points during 2011, Blackwell complained to SCI Mahanoy officials about his lack of treatment. His first complaint was to Brenda Tritt, a deputy superintendent at the prison. On August 29, 2011, Blackwell submitted an inmate request form to Tritt, stating that he had yet to receive medical care for his sleep apnea and asking Tritt to look into the matter. Blackwell informed Tritt that the prison's medical staff had told him they would not treat his sleep apnea until they received his pre-incarceration medical records. Blackwell further stated in his request form that his sleep apnea was marked by "long periods at night where [his] breathing stops for 60 sec[onds] or more" and resulted in tiredness during the day, as well as "minor brain damage." On September 6, 2011, Tritt responded that Grievance Officer Alice Chipriano would check

Blackwell's file, although outside records requested by the prison had not yet been received, that the doctor was being advised of the situation, and that Blackwell should "[e]xpect testing."  8/29/11 Inmate's Request to Staff Member.

Approximately two weeks later, Blackwell filed an internal prison grievance regarding the lack of treatment for his sleep apnea.[4]  Grievance Officer Chipriano denied that grievance.  In her response, she stated that a prison physician assistant was attempting to obtain records from a Temple University sleep study in which Blackwell claimed to have participated.  The physician assistant was having difficulty, however, given that Blackwell could not provide the precise dates of the sleep study.  Chipriano also reported that the physician assistant would "call Temple's sleep study center in an attempt to get the necessary information to confirm the need for a CPAP machine or a diagnosis of sleep apnea."[5]  9/21/11 Initial Review Resp.

At some point, Blackwell's complaints reached Richard S. Ellers, Director of the DOC Bureau of Health Care Services.  On December 1, 2011, Ellers sent a letter to Blackwell addressing his concern that he was receiving inadequate medical

---

[4] Blackwell's complaint attaches SCI Mahanoy's response to a September 19, 2011 grievance, but not the grievance itself.

[5] "CPAP" stands for "continuous positive airway pressure." Keyes v. Catholic Charities, 415 F. App'x 405, 407 (3d Cir. 2011).  A CPAP machine is worn during sleep to aid an individual's breathing.  See id. at 407-08.

-4-

treatment for his sleep apnea. Ellers informed Blackwell that the Bureau of Health Care Services had reviewed the matter and had determined that the care being provided by SCI Mahanoy staff was "medically appropriate." The letter stated that DOC inmate medical services are "consistent with community standards," and that the SCI Mahanoy medical team would continue to monitor Blackwell's condition and provide any necessary treatment. In closing, the letter directed Blackwell to address any further questions or concerns to Dr. John Lisiak, Medical Director at SCI Mahanoy, or Marva Cerullo, SCI Mahanoy's Corrections Health Care Administrator. Ellers copied Tritt, Cerullo, and Superintendent John Kerestes on the letter. 12/1/11 Letter.

Five days later, on December 6, 2011, Superintendent Kerestes received a letter from Blackwell, in which Blackwell sought to appeal Chipriano's September 21, 2011 grievance denial.[6] Blackwell maintained that he should not be denied testing or treatment for sleep apnea due to SCI Mahanoy's inability to locate his outside medical records. The letter went on to say that Blackwell was suffering various medical problems due to his untreated sleep apnea. 12/6/11 Letter. The next day,

---

[6] Blackwell's December 6, 2011 letter expresses his desire to "appeal [his] grievance." The upper right corner of the letter bears the number "381492," the same identification number given to the grievance addressed in Chipriano's September 21 grievance response. 12/6/11 Letter; 9/21/11 Initial Review Resp.

Kerestes denied Blackwell's grievance appeal, finding that Chipriano had properly researched and responded to Blackwell's grievance.[7]  12/7/11 Facility Mgr.'s Appeal Resp.

During 2011, Blackwell also sought medical treatment for a "knee injury," and received an x-ray of his knee and Acetaminophen.  He claims the Acetaminophen was "no good for [his] liver" and that "they" were aware of his liver condition.  Compl. II.C., III.

## II. Analysis

Blackwell claims that the defendants' failure to provide him with adequate medical treatment for sleep apnea and a knee injury constitutes "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  To succeed on such a claim, Blackwell must demonstrate that the defendants (1) acted or failed to act in a manner exhibiting deliberate indifference (2) to his "serious medical needs."  Id. at 106; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

The "deliberate indifference" standard is akin to "recklessness as that term is defined in criminal law."  Nicini

---

[7] The form states that it was signed by SCI Mahanoy's "Facility Manager," although it does not anywhere print the name of that individual.  The Court understands Kerestes, as SCI Mahanoy Superintendent, to be that institution's Facility Manager and the signatory on the appeal response.

v. Morra, 212 F.3d 798, 811 (3d Cir. 2000) (en banc). The defendant must subjectively be aware of facts from which he can infer the existence of a substantial risk of serious harm and he must actually make that inference. Id. (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Allegations of mere negligence in diagnosis or medical treatment are not cognizable violations of the Eighth Amendment. Estelle, 429 U.S. at 106. The Court of Appeals for the Third Circuit has found deliberate indifference where the prison official, among other things, (i) knew of a prisoner's need for medical treatment and refused to provide it, (ii) delayed necessary medical treatment for a non-medical reason, or (iii) prevented a prisoner from receiving needed or recommended medical treatment. Rouse, 182 F.3d at 197.

Relevantly, liability for a § 1983 violation cannot be predicated on respondeat superior. Ashcroft v. Iqbal, 556 U.S. 662, 675-76 (2009). A supervisor can only be held liable for the unconstitutional actions of a subordinate where the supervisor personally directed the acts at issue or knew the plaintiff's rights were being infringed and acquiesced in the violation. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

The defendants argue that Blackwell has failed to establish that any of them acted with deliberate indifference to his medical needs. Because the Court agrees with the defendants,

it will not address whether Blackwell's purported injuries are sufficiently "serious" under the Eighth Amendment standard.

   A.   Knee Injury

Blackwell fails to state a claim of deliberate indifference with respect to his unspecified "knee injury." Blackwell does not allege when he suffered this knee injury or how long, if at all, it went untreated. Blackwell acknowledges that he did, at some point, receive treatment for the injury in the form of an x-ray and Acetaminophen. The basis for his inadequate medical care claim appears to be that the Acetaminophen was "no good for [his] liver" and that "they" knew he had liver problems, presumably referring to the medical care providers who gave him that medication. Compl. III. This is, at best, a claim of negligent medical treatment, which does not rise to the level of a constitutional violation. Estelle, 429 U.S. at 106. Even if the facts as pled constitute allegations of reckless conduct, Blackwell does not state that any of the named defendants participated in treating his knee injury or were even aware of it.

   B.   Dr. Lisiak

The complaint and accompanying exhibits include only one references to Dr. Lisiak in connection with Blackwell's sleep

apnea condition. The December 1, 2011 letter from Ellers stated that Blackwell should direct any future questions or concerns regarding treatment for his sleep apnea to Dr. Lisiak. The letter does not say that Lisiak was previously involved in prescribing or denying Blackwell treatment or what, if anything, Lisiak knew about Blackwell's medical care. The letter also did not copy Lisiak and there is nothing to suggest he even received it. The only other mention of Dr. Lisiak is Blackwell's claim that he "wrote" to him at some point, although Blackwell does not describe the contents or timing of the writing. See Compl. IV.G.

These summary references to Dr. Lisiak fail to state a claim that he was deliberately indifferent to any of Blackwell's medical needs.[8] The fact that he held a supervisory position as Medical Director at SCI Mahanoy is insufficient to establish liability for the treatment provided by other medical staff. The Court will, therefore, grant Dr. Lisiak's motion for judgment on the pleadings.

C. PHS

The parties' submissions do not explain the precise relationship existing between PHS and the DOC. PHS appears to be

---

[8] The complaint makes the same vague allegation that Blackwell "wrote" to all of the defendants, except Wetzel. See Compl. IV.G. Because, without more, this fact does not advance Blackwell's claim that any of them was deliberately indifferent to his medical needs, the Court will not discuss this allegation with respect to any of the remaining defendants.

a private contractor that provides medical services at SCI Mahanoy. See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 577-78 (3d Cir. 2003) (noting that PHS is a "private company that provides health services" to New Jersey correctional facility inmates); PHS' Br. at 4 (discussing and applying the § 1983 liability standard for a "private corporation").

As with an individual in a supervisory position, a business entity, such as PHS, cannot be held liable for § 1983 violations of its employees on a theory of vicarious liability. Natale, 318 F.3d at 583 (citing Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). PHS can only be found liable if it had a policy or custom that permitted or caused the violation of Blackwell's constitutional rights. Id. at 583-84; see also Afdahl v. Cancellieri, 463 F. App'x 104, 109 (3d Cir. 2012) (per curiam). The complaint does not cite any policy or custom maintained by PHS that resulted in injury to Blackwell. As such, there is no basis in the complaint for holding PHS liable under § 1983, and the Court will grant PHS' motion to dismiss.

    D.    <u>Commonwealth Defendants</u>

As a preliminary matter, the Commonwealth Defendants argue that any claims against them in their official capacities are barred by the doctrine of sovereign immunity. The Court

agrees. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 (3d Cir. 2010). Blackwell may only seek damages against the Commonwealth Defendants in their personal capacities. See Hafer, 502 U.S. at 30-31. For the reasons stated below, Blackwell fails to state a claim against any of the individual Commonwealth Defendants.

1. John Wetzel

Other than naming him as a defendant, the complaint and accompanying exhibits contain no further mention of Secretary of Corrections John Wetzel. There is nothing to suggest that he knew of or was deliberately indifferent to any of Blackwell's medical needs.

2. Richard Ellers

Ellers' singular involvement in Blackwell's request for sleep apnea treatment is captured by the December 1, 2011 letter responding to Blackwell's concern that he was not being sufficiently treated by prison medical staff. Far from exhibiting deliberate indifference, the letter demonstrates that Ellers and his staff in the DOC Bureau of Health Care Services reviewed and addressed Blackwell's claim of inadequate care. Ultimately, Ellers conveyed to Blackwell that the treatment being provided to him was "medically appropriate." The letter further

stated that medical staff would continue to monitor Blackwell's condition and that Blackwell could contact Dr. Lisiak or Cerullo if he had any future questions or concerns. The fact that Blackwell may have disagreed with the course of treatment chosen by the SCI Mahanoy medical team and approved by Ellers does not establish a claim that Ellers was deliberately indifferent to Blackwell's medical needs. Estelle, 429 U.S. at 106; Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).

### 3. Marva Cerullo

Marva Cerullo, as SCI Mahanoy Corrections Health Care Administrator, holds a non-medical administrative position within the prison. See Thomas v. Dragovich, 142 F. App'x 33, 34, 37 (3d Cir. 2005) (defining Cerullo's prison health care position as an administrative one not part of the medical staff). The Third Circuit has noted that, "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). The court in Spruill went on to hold that, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the

Eighth Amendment scienter requirement of deliberate indifference." Id.; see also Goodrich v. Clinton Cnty. Prison, 214 F. App'x 105, 112 (3d Cir. 2007) (finding that where medical staff is providing a prisoner with "medical consultation and evaluation," a non-medical supervisor in the prison system "cannot be considered deliberately indifferent for failing to second-guess the medical staff's appraisal of the situation").

The only mention of Cerullo in Blackwell's submission, aside from the fact that Blackwell "wrote" to her, is in the December 1, 2011 letter from Ellers. In addition to being listed as a contact person for future complaints, Cerullo was copied on the letter. With that letter, Cerullo was apprized that Blackwell's sleep apnea was being handled in a manner deemed suitable by both SCI Mahanoy medical personnel and higher-level medical officials within the DOC. Cerullo cannot be considered deliberately indifferent to Blackwell's medical needs for failing to second-guess those opinions.

### 4. Brenda Tritt

According to the materials accompanying Blackwell's complaint, Tritt was the first person Blackwell contacted to complain about his lack of treatment for sleep apnea and the ill health effects he was suffering as a result. In a form submitted to Tritt on August 29, 2011, Blackwell informed her that he had

-13-

been to sick call several times over the preceding 8 months seeking medical care for sleep apnea and that the medical staff had refused to treat him until they received his pre-incarceration medical records.  Tritt did not ignore this complaint, however.  She responded that Grievance Officer Chipriano, apparently acting at Tritt's behest, was reviewing Blackwell's file and that the doctor would be advised that the outside medical records had not yet been received.  She also told Blackwell to "[e]xpect testing."  8/29/11 Inmate's Request to Staff Member.  Blackwell offers nothing to suggest that he ever again complained to Tritt about inadequate sleep apnea treatment.

      Moreover, after that point, Tritt received correspondence from other prison personnel demonstrating that Blackwell's medical needs were being addressed.  Tritt was copied on correspondence from Chipriano informing Blackwell that a physician assistant would contact Temple to obtain information regarding the sleep study in which he participated. 9/21/11 Initial Review Resp.  Tritt was also copied on Ellers' December 1 letter stating that Blackwell's treatment up to that point had been "medically appropriate."  These facts do not support an Eighth Amendment claim of deliberate indifference against Tritt.

5. John Kerestes

Like Tritt, Superintendent Kerestes was aware of Blackwell's concern that the prison medical staff was not properly treating his sleep apnea. On December 6, 2011, Kerestes received a letter from Blackwell appealing Chipriano's grievance response. The letter stated that the prison's medical team refused to treat Blackwell's sleep apnea without first receiving his outside medical records. Blackwell complained that the continued lack of treatment was causing him to suffer from "sleepless nights, headaches, breathing stops for periods of time, . . . decreased ability to function and minor brain damage." 12/6/11 Letter. Kerestes denied Blackwell's appeal one day later.

Kerestes' decision to deny the grievance appeal, his only act pertaining to Blackwell's request for medical treatment, does not rise to the level of deliberate indifference. The information then available to Kerestes demonstrated that prison officials were responding to Blackwell's medical needs. In her grievance denial, Chipriano stated that she was actively attempting to confirm Blackwell's need for sleep apnea treatment by trying to track down his records from Temple. Moreover, less than a week before Blackwell submitted his grievance appeal, Ellers copied Kerestes on his December 1, 2011 letter conveying

the Bureau of Health Care Services' view that Blackwell was receiving "medically appropriate" care for his purported sleep apnea condition.  Kerestes was entitled to rely on that evaluation, even if Blackwell himself thought it unreasonable for the medical staff to withhold treatment until receiving his pre-incarceration records.  See Spruill, 372 F.3d at 236; Goodrich, 214 F. App'x at 112.

III. Conclusion

For the foregoing reasons, the Commonwealth Defendants' motion to dismiss, PHS' motion to dismiss, and Dr. Lisiak's motion for judgment on the pleadings are granted.  An appropriate order shall issue separately.